

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

March 17, 1939

Hon. Orville S. Carpenter
Chairman and Executive Director
Texas Unemployment Compensation Commission
Austin, Texas

Dear Sir:

Opinion No. 0-488
Re: Under facts stated, may contributions of supposed employer for year 1936 and months of January through August 1937, be refunded?

We are in receipt of your letter of March 8, 1939, in which you request an opinion as to whether a refund of taxes paid under the Texas Unemployment Compensation Act, Article 5221b of the Revised Civil Statutes of Texas can be made under the following situation:

"One W. T. Conley of El Paso, Texas, who is a dealer for the Sinclair Refining Company, regularly paid contributions under the Texas Unemployment Compensation Act on the wages paid his employees for the years 1936, 1937, and through the month of July 1938. In July 1938 this Commission determined that under the Texas Unemployment Compensation Act such employees were not the employees of Mr. Conley but were, in fact, the employees of the Sinclair Refining Company and that the Sinclair Refining Company was therefore liable for the unemployment compensation taxes upon their wages. Upon demand, the Sinclair Refining Company paid the taxes on the wages of these same employees, for the same period of time, as taxes owing by the Sinclair Refining Company.

"Thereupon, Mr. Conley filed a claim for refund for $321.31, being the amount of such taxes that he had paid during this period of time and being the amount subsequently paid by the Sinclair Refining Company. He was refunded $150.07 as the amount of taxes paid from September 1937 through July 1938; and

his claim in the amount of $162.24 with respect to taxes for the year 1936 and January through August 1937 was denied for the reason that such claim was not presented within one year after the date upon which they became due, as provided in Section 14(d) of the Texas Unemployment Compensation Act."

Section 14(d) of the Act is headed "Refunds", and is the controlling section in the present instance. Nowhere else in the Act is any provision made for the refund of contributions mistakenly or otherwise paid under the terms and provisions of the statute. Section 14(d) reads as follows:

"If not later than one (1) year after the date on which any contributions or interest thereon became due, an employer who has paid such contributions or interest thereon shall make application for an adjustment thereof in connection with subsequent contribution payments, or for a refund thereof because such adjustment can not be made, and the Commission shall determine that such contributions or interest or any portion thereof was erroneously collected, the Commission shall allow such employer to make an adjustment thereof, without interest, in connection with subsequent contribution payments by him, or if such adjustment can not be made the Commission shall refund said amount, without interest, from the fund. For like cause and within the same period, adjustment or refund may be so made on the Commission's own initiative."

The above section clearly, explicitly and unambiguously provides that a claimant for refund must file his application with the Unemployment Compensation Commission "not later than one (1) year after the date on which any contributions or interest thereon became due", in order to obtain a remittance from the Commission, if it is certain that he is entitled to a refund.

Said Article provides a period of limitation on the refunding of contributions erroneously collected



under the Act. The claimant is barred if he does not file within the prescribed time limit.

It is agreed that the contributions made by W. T. Conley "were erroneously collected", for the simple reason that he was not the employer of the parties upon whose wages the taxes were paid. Still, insofar as the refund is concerned, Mr. Conley is in the shoes of an employer who has erroneously paid contributions to the Commission -- he can be placed in no better position. To be effective, his remedy of refund must be exercised within one (1) year after the contribution erroneously paid became due.

This was not done in respect to taxes in the amount of $162.24 for the year 1936, and the months of June through August 1937. Consequently, his claim is barred.

The operation of the law in this situation might be harsh in its effect upon the equities of claimant, but the Legislature has declared the rule, and, in our opinion, it is subject to no other construction than that which we have placed upon it.

Referring to general rules and regulations of the Texas Unemployment Compensation Commission relating to the Unemployment Compensation Act, namely, Bulletin 2, Regulation 38, we find that the Texas Unemployment Compensation Commission has placed the same construction upon Section 14(d) of Article 5221b. The regulation is in accord with the obvious meaning of the section to which it refers and is indicative of the manner in which the Commission has been enforcing the section of the act relating to refunds.

We quote regulation 38, with special emphasis on portions (underscoring ours):

"Not later than one year after the date on which any contributions or interest thereon became due, or payments are erroneously made when no contributions are payable, an employer who has paid such contributions or interest thereon may make application under oath to the Commission for an adjustment thereof, or for a refund thereof (on blanks to be furnished by the Commission) in any case where payments or overpayments of contributions to the Commission were erroneously made.

"Such application shall state the facts upon which he claims an adjustment or refund, and if an adjustment thereof cannot be conveniently made in connection with subsequent contribution payments, the reasons must be stated why an adjustment cannot be so made.

(2) If the Commission determines that such payments or any portion thereof was erroneously made, it shall so find and permit an adjustment thereof as follows:

(A) If the overpayment is in an amount which can be adjusted in connection with the first subsequent contribution payment to be made by the applicant, it shall be so adjusted, without interest.

(B) If the payment or overpayment is in an amount that cannot be adjusted in connection with the first subsequent contribution payment to be made by the applicant, the Commission shall allow a refund, without interest.

(C) If the payment was erroneously made when no contributions were payable, such payment shall be refunded, without interest.

(3) Within one year after the date on which any contribution or interest thereon became due, or payments are erroneously made to the Commission, when no contributions were payable, the Commission may on its own initiative, and without any application being filed therefor, find that such payments or overpayments were erroneously made and make an adjustment thereof as provided in (2), (A), (B), and (C). But no adjustment or refund shall be made until affidavit is filed with the Commission stating that the amount of said adjustment or refund is just, due and unpaid.

(4) If payments are made to the Commission by an individual, corporation, or

other legal entity, and claim for an adjust-
ment or refund is thereafter filed by the
legal representative of such individual,
corporation, or other legal entity, certi-
fied copies of the appointment of such legal
representative must be annexed to the claim
to show the authority of the executor, ad-
ministrator, guardian, trustee, receiver or
other fiduciary by whom the claim is filed."

One of the most significant provisions of Section
14(d) is the phrase "the date on which any contributions
or interest thereon became due." The "due" date rather
than the date of payment is controlling. No matter when
the contributions are paid, the one (1) year period of
limitation against refunds begins to operate in favor of
the state "after the date on which any contributions or
interest thereon became due."

We hold that the Unemployment Compensation Com-
mission can not legally, under the Texas Unemployment
Compensation Act refund taxes paid by Mr. Conley with
respect to the year 1936, and the months of January
through August 1937, in the sum of $162.24.

Believing that this answers your inquiry, we
are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By  Dick Stout

Dick Stout
Assistant

DS-MR

APPROVED:

Gerald C. Mann
ATTORNEY GENERAL OF TEXAS